### UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| Forks Specialty Metals Inc., | : | |
| Debtor. | : | Bankruptcy No.  17-18061-MDC |

| | | |
|---|---|---|
| Lynn E. Feldman, Esquire, Trustee for the | : | |
| Estate of Forks Specialty Metals Inc., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | Adversary No.  19-00028-MDC |
| Grand River Ironsands Incorporated, | : | |
| North Atlantic Iron Corporation, | : | |
| Metalo Manufacturing Inc. f/k/a | : | |
| Muskrat Minerals Incorporated, and | : | |
| Francis MacKenzie, | : | |
| Defendants. | : | |

# <u>MEMORANDUM</u>

## I.    INTRODUCTION

Lynn E. Feldman (the "Trustee"), the chapter 7 trustee of the bankruptcy estate of Forks

Specialty Metals, Inc. (the "Debtor"), initiated the above-captioned adversary proceeding (the

"Adversary Proceeding") against four defendants: Grand River Ironsands Incorporated ("GRI"),

North Atlantic Iron Corporation ("NAIC"), Metalo Manufacturing Inc. f/k/a Muskrat Minerals

Incorporated ("MMI," and together with GRI and NAIC, the "Entity Defendants"), and Francis

MacKenzie ("Mr. MacKenzie," together with the Entity Defendants, the "Defendants," and

together with the Entity Defendants and the Trustee, the "Parties").   The Complaint asserts a

variety of claims based on the Defendants' alleged relationship with and actions or omissions

concerning the Debtor.

On June 17, 2019, the Defendants moved to dismiss the Trustee's initial Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6) based on lack of personal

jurisdiction and failure to state a claim.[1]   After the District Court denied the Defendants' request

to withdraw reference of the Adversary Proceeding, this Court entered an Order (the "Dismissal

Order")[2] granting the motion to dismiss in part and denying it in part, finding (a) that the

Complaint failed to satisfy the requirements of Federal Rules of Civil Procedure 8 and 10(b), and

therefore would be dismissed, subject to the Trustee filing an amended Complaint within 30

days, and (b) that, based on the allegations in the initial Complaint, the Court had personal

jurisdiction over Mr. MacKenzie, without ruling on whether personal jurisdiction exists with

respect to the Entity Defendants.

In compliance with the Dismissal Order, the Trustee filed a First Amended Complaint

(the "Amended Complaint").[3]   The Defendants have again moved to dismiss the Amended

Complaint (the "Motion to Dismiss")[4] pursuant to Federal Rules of Civil Procedure 12(b)(2) and

12(b)(6), based on lack of personal jurisdiction and failure to state a claim.[5]

For the reasons set forth herein, the Motion to Dismiss will be granted with respect to (a)

the only count against Mr. MacKenzie, for breach of fiduciary duty, (b) all counts against MMI

and GRI, and (c) the counts against NAIC for aiding and abetting breach of fiduciary duty and

---

[1]  Adv. Pro. Docket No. 8.

[2]  Adv. Pro. Docket No. 47.

[3]  Adv. Pro. Docker No. 49.

[4]  Adv. Pro. Docket No. 53.

[5]  Because the Court has already found that personal jurisdiction over Mr. MacKenzie exists, it
understands that only the Entity Defendants seek dismissal pursuant to Federal Rule of Civil Procedure
12(b)(2) for lack of personal jurisdiction.   *See* Defendants' Brief in Support of Motion to Dismiss, at §I.

common enterprise and/or joint venture liability, and will be denied with respect to the counts

against NAIC for avoidance and recovery of alleged fraudulent transfers, quantum meruit, and

liability on an open account.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND[6]

### A.    Factual Background

GRI was established in 2007 in Nova Scotia, Canada.   MMI owns 44% of its equity.[7]

In turn, between 2012 and 2017, GRI owned a 60% interest in NAIC, which is a development

stage pig iron company.[8]   MMI and NAIC are also based in Canada.[9]   The Debtor is a

---

[6] The facts set forth herein are drawn from only the well-pleaded allegations in the Amended Complaint. Motions to dismiss under Rule 12(b)(2) and Rule 12(b)(6) require a court to accept as true all non-conclusory allegations of the complaint and construe disputed facts in a light most favorable to the plaintiff.   *See, e.g., Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368, 374 n.7 (3d Cir. 2002); *Wyatt v. Inner City Broad. Corp.*, 2011 U.S. Dist. LEXIS 110979, at *4 (S.D.N.Y. Sept. 28, 2011).   As such, the Court must ignore contradictory facts cited in the Motion to Dismiss.   *Feldman v. Am. Asset Fin.., LLC*, 534 B.R. 627, 640-641 (E.D. Pa. 2015).   However, the Court is not required to accept conclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts.   *Bankr. Estate v. Shapiro Pentergast & Hasty LLP*, 2018 U.S. Dist. LEXIS 223010, at *2 (N.D. Ga. Nov. 21, 2018) (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).   Moreover, the Court may consider exhibits attached to the Amended Complaint, as well as documents attached to the Motion to Dismiss, if the authenticity of the document is not in question and the Trustee's claims are based on the document.   *Feldman*, 534 B.R. at 641; *Angulo v. Emigrant Mortg. Co.,* 2010 Bankr. LEXIS 1402, at *8-*9 (Bankr. E.D. Pa. Apr. 23, 2010) (quoting *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d. Cir. 1993)).   The Court may not consider additional facts in a response brief to a motion to dismiss, which can be incorporated into an amended complaint if leave to do so is granted.   *Dade v. Gaudenzia DRC, Inc.,* 2013 WL 3380592, at *2, n.1 (E.D. Pa. July 8, 2013).

[7] According to the Motion to Dismiss, MMI owned between 40% and 44% of GRI between 2012 and 2017.   Motion to Dismiss, at §II.A.2.

[8] The Motion to Dismiss states that in 2018 GRI's membership stake in NAIC increased to 90%.   *Id.* at §II.A.3.

[9] Paragraph 43 of the Amended Complaint avers that GRI is based in Nova Scotia, Canada, but fails to specifically allege where each of MMI and NAIC are based.   The Amended Complaint does allege, however, that the Defendants directed and controlled the Debtor's operations from Canada, and maintained the Debtor's books and records in Halifax, Nova Scotia, Canada.   *Id.* at ¶¶23, 24.   The Motion to Dismiss provides more clarity, representing that (i) MMI is a Canadian corporation incorporated under the laws of Alberta, Canada and headquartered in Toronto, Canada, (ii) GRI is a

Pennsylvania corporation that GRI formed[10] on November 2, 2012, for the acquisition of certain

industrial furnaces NAIC required to undertake a large scale melt test of its iron ore deposit.

GRI was the majority, if not only, shareholder of the Debtor.[11]

The Amended Complaint lacks precision regarding the management and leadership of the

Debtor and the Entity Defendants, but does assert that (i) Mr. MacKenzie served as President of

each of the Entity Defendants, and as a director of the Debtor and GRI, (ii) Kevin Kemper ("Mr.

Kemper") served as the Debtor's Vice President of Finance and Business Development, and (iii)

in addition to Mr. MacKenzie's overlapping roles, Mr. Kemper, Jean-Marc MacKenzie, Albert

LeBlanc, and Lina Tannous ("Ms. Tannous") served interlocking officer and director roles with

the Debtor and the Entity Defendants.   *See Id.* at ¶¶ 41, 46, and Ex. C. at 8.   The Motion to

Dismiss clarifies that Mr. MacKenzie was President and a director of the Debtor and all three

---

Canadian company incorporated under the laws of Nova Scotia, Canada and headquartered in Halifax,
Canada, and (iii) NAIC is a Canadian company incorporated under the laws of Newfoundland and
Labrador, Canada and headquartered in Bedford, Nova Scotia, Canada.   Motion to Dismiss, at §§II.A.1
to II.A.3.   The Parties therefore agree that the Entity Defendants are Canadian companies based in
Canada.

[10]  The document attached to the Amended Complaint at Exhibit C, which is an overview of the Debtor
dated January 23, 2013, states that the Debtor was founded "by the principals of [NAIC] . . . NAIC's
largest shareholder [is] GRI …."   Ex. C, at 6.   Exhibit E to the Amended Complaint, an investment
teaser dated January 2017, states that GRI incorporated the Debtor in 2012 as an acquisition vehicle.   Ex.
E., at 2.   In the Motion to Dismiss, the Defendants acknowledge "GRI's role in founding [the Debtor]".
Motion to Dismiss, at III.A.4.   Together, the Court reads these sources to reflect that GRI formed the
Debtor.

[11]  The Amended Complaint avers that the Debtor "was wholly owned, controlled and operated by
Defendants."   Amended Complaint, at ¶14.   It later clarifies this imprecise allegation, averring that GRI
was the sole shareholder of Debtor.   *Id.* at ¶55(a).   Exhibit E to the Amended Complaint, dated January
2017, states that "GRI owns 80% [of the Debtor], and the other 20% is owned by a
management/operating team."   Ex. E, at 2.   The Motion to Dismiss states that the Debtor was formed in
2012 and is wholly owned by GRI.   Motion to Dismiss, at §II.A.2.   These varying statements regarding
the Debtor's ownership leaves the Court unclear as to which party or parties owned its equity upon
formation, and whether and to what extent that changed in the years prior to the Debtor's bankruptcy
filing.   Nonetheless, there appears to be no dispute that GRI controlled at least 80% of the Debtor's
equity at all given times.

Entity Defendants, Mr. Kemper was an officer and director of the Debtor and an officer of all

three Entity Defendants, and from 2014 Ms. Tannous was an officer of the Debtor and all three

Entity Defendants.   Motion to Dismiss, at §§II.A.4 to II.A.5.[12]   The Motion to Dismiss further

states that other than Mr. MacKenzie, there were no common directors among the Debtor and the

Entity Defendants.   *Id.* at §II.A.4.[13]

On or about November 30, 2012, in a transaction GRI negotiated, the Pennsylvania

Department of Community and Economic Development (the "Pennsylvania DCED") sold the

Debtor certain used industrial equipment, including two Submerged Arc Furnaces (the

"Furnaces") located in Easton, Pennsylvania, as set forth in a Bill of Sale (the "Bill of Sale"), for

a purchase price of $1,600,000.[14]   In connection with the sale, the Debtor executed a promissory

note (the "Note") in favor of the Pennsylvania DCED in the principal amount of $1,600,000.

Mr. MacKenzie executed the Note on behalf of the Debtor as President.

At or about the time of the Debtor's formation in November 2012, NAIC and the Debtor

agreed to a furnace rental contract whereby the Furnaces would be used to undertake the large-

---

[12]  Rather than contradict the Amended Complaint, the clarity provided by the Motion to Dismiss regarding the Debtor's management and board fills the gaps in the Amended Complaint's allegations regarding interlocking officer and director roles among the Debtor and the Entity Defendants, and therefore the Court cites the additional background the Motion to Dismiss provides.

[13]  The Motion to Dismiss avers that although Mr. MacKenzie, Mr. Kemper, and Ms. Tannous had officer roles with the Debtor and the Entity Defendants, "MMI's remaining two officers had no role or involvement with [the Debtor]; GRI's remaining three officers had no role or involvement with [the Debtor]; and NAIC's remaining three officers had no role or involvement with [the Debtor]."  *Id.* at II.A.5.   The Amended Complaint lacks precision on this point, but it may be that the overlapping officer and director roles the Trustee asserts existed were between the Entity Defendants, and not including the Debtor. The Court cannot tell from the Amended Complaint's allegations.

[14]  The Bill of Sale is executed by representatives of the Pennsylvania DCED and RSI Silicon Products LLC, which was the defunct prior owner of the Furnaces; the Debtor is not a party to the Bill of Sale. *See* Amended Complaint at Ex. A.

scale iron ore deposit melt test for NAIC.[15]   The Debtor's revenue was virtually entirely

dependent on its contract with NAIC; for the five-year period ended June 30, 2017, the Debtor

recorded fees of $5,139,000 for services rendered to NAIC, and just $43,000 in revenue from

third-party users of its smelting services.   As such, NAIC was responsible for over 99% of the

Debtor's cash flow during that five-year period.

According to Plaintiff, however, this revenue did not offset the Debtor's costs in owning

and maintaining the Furnaces.   The Furnaces' cost value was approximately $2,900,000, with a

seven-year tax life.   The cost to lease the site and facility housing the Furnaces was

approximately $756,000.   The cost to administer the NAIC tests was approximately $800,000

annually.   Together, according to the Trustee, these costs equated to a fair rental value of

$2,000,000 annually.   The fees the Debtor received, however, were approximately $1,000,000 in

2014, $1,600,000 in 2015, $1,480,000 in 2016, and approximately $1,000,000 in 2017.[16]   The

Debtor's books and records also reflect that NAIC owed the Debtor at least $133,000 as of the

Debtor's bankruptcy filing for services provided.

### B.      Procedural Background

#### 1.      The Amended Complaint

The Trustee asserts by the Amended Complaint that the Defendants formed the Debtor as

a testing, research and development facility and division for their own operations, failed to

provide it with sufficient capital to conduct any business other than serving their own needs, and

---

[15]  The Debtor's initial tax return filed in 2014 identified itself as a lessor of industrial equipment.   *See* Amended Complaint at ¶31.

[16]  The Amended Complaint does not include any allegation regarding fees the Debtor received from NAIC in 2013.   *See* Amended Complaint at ¶37.

6

treated it as a mere instrumentality of their group enterprise, subject to their complete domination

and control from Canada.   Amended Complaint, at ¶¶12, 17, 24, 25.   The Trustee avers that the

Debtor was merely a façade for the operations of the Entity Defendants,[17] which functioned with

the Debtor as a single entity (either as a common enterprise or a joint venture) in disregard of

corporate form and formalities, and therefore the Entity Defendants' corporate veils should be

pierced and their assets considered assets of the Debtor, available for satisfaction of the Debtor's

debts.   *Id.* at ¶¶55, 60, 62, 68-70, 93.

The Trustee further asserts that GRI entered into transactions "utilizing assets of the

Debtor as if they were GRI assets," and GRI and NAIC marketed the Debtor's assets as if they

belonged to GRI and NAIC.   *Id.* at ¶¶18-19, 51-53.   The Trustee alleges the Debtor's creditors

"relied on Defendants' representations that [the Debtor] was a division of Defendants, an integral

component of the overall enterprise and not a separate corporate entity.   They had no reason to

believe that they were dealing with a separate entity due to the representations and control

exhibited by Defendants."   *Id.* at ¶54.   According to the Trustee, the Defendants used that

control and those representations regarding their support for the Debtor "to commit fraudulent,

wrongful or unjust acts against the Debtor's creditors."   *Id.* at ¶21.   The Trustee also asserts that

the Defendants breached their purported fiduciary duties to the Debtor by engaging in various

bad acts, including denying the Debtor access to funds, entering into agreements that

intentionally interfered with the Debtor's operations, withholding material information from the

Debtor, removing the Debtor from its facilities by "transferring all the assets," forcing the Debtor

---

[17] Although the Amended Complaint uses the term "Defendants" repeatedly notwithstanding that many of the allegations relate only to the Entity Defendants, the Court does not repeat that usage, and uses the term Entity Defendants where appropriate to accurately summarize the Complaint's allegations.

to incur costs beyond its ability to pay, and rendering the Debtor "a worthless shell." *Id.* at ¶100.

The Trustee alleges that Mr. MacKenzie took active part in the commission of the Entity Defendants' misrepresentations and breached his fiduciary duties to the Debtor "by ceasing to fund the Debtor," and, as an agent of all of the Entity Defendants, his actions create joint and several liability for each. *Id.* at ¶¶80, 81, 91.

The Amended Complaint alleges seven causes of action against some or all Defendants:[18]

- **Breach of Fiduciary Duty -** Count 1 asserts a breach of fiduciary duty claim against Mr. MacKenzie, and aiding and abetting breach of fiduciary duty claim against the Entity Defendants.   The Trustee claims that Mr. MacKenzie disregarded his fiduciary duties of care, loyalty, and fair dealing to the Debtor, instead favoring the interests of the Entity Defendants, who are liable for aiding and abetting Mr. MacKenzie "and others" in breaching their fiduciary duties. *Id.* at ¶¶120-125.

- **Corporate Veil Piercing/Alter Ego -** Count 2 asserts a piercing the corporate veil piercing/alter ego claim against GRI and MMI.   The Trustee claims that, through Mr. MacKenzie, GRI exerted *ultra vires* control over the Debtor solely for its own good and derivatively for the good of NAIC.   The Trustee claims that MMI is also liable because, through Mr. MacKenzie, it exerted *ultra vires* control

---

[18] The Amended Complaint does not set forth each cause of action as a separate count, as is typical of adversary complaints.   Rather, what would customarily be titled as counts are titled "First Cause of Action," "Second Cause of Action," *etc.*   Because, however, the Court believes each cause of action is understood to be a count of the Amended Complaint, the Court will refer to the titled causes of action as counts.

over its subsidiary, GRI, which in turn controlled the Debtor.   The Trustee asserts the control of MMI over GRI and GRI over the Debtor is evidenced by a commingling of accounts, failing to adhere to corporate formalities, and using the Debtor to commit fraud or injustice to further personal interests.   *Id.* at ¶¶126-138.

- **Fraudulent Conveyance -** Count 3 asserts a fraudulent conveyance claim against NAIC pursuant to §§544 and 548 of the Bankruptcy Code, and an aiding and abetting fraudulent conveyance claim against GRI and MMI.   The Trustee claims the Debtor received less than reasonably equivalent value for services provided to NAIC, and that GRI and MMI, acting through Mr. MacKenzie, orchestrated, participated in and/or aided and abetted the use of the Debtor's assets without sufficient compensation.   *Id.* at ¶¶139-147.

- **Joint Liability (Common Enterprise/Joint Venture) -** Count 4 asserts a claim against the Entity Defendants based on common enterprise or joint venture liability.   The Trustee claims the Entity Defendants and the Debtor were a single entity engaged in a common enterprise or joint venture, whereby Mr. MacKenzie, in conjunction with others, acted as a representative of each Entity Defendant to coordinate the functioning of the Debtor for the Entity Defendants' benefit.   The Trustee claims the Entity Defendants are therefore liable for the Debtor's debts.   *Id.* at ¶¶ 148-153.

- **Breach of Duties (Common Enterprise/Joint Venture) -** Count 5 asserts a claim against the Entity Defendants based on common enterprise/joint venture

9

fiduciary liability.   The Trustee alleges the Entity Defendants, as members of a

common enterprise or joint venture with the Debtor, had a duty to treat the Debtor

with good faith, to act for the benefit of all members, and to disclose all material

facts concerning the enterprise, and their failure to do so was a breach of the

fiduciary duties of care, loyalty, and fair dealing.   *Id.* at ¶¶154-158.

- **Quantum Meruit -** Count 6 asserts a claim against the Entity Defendants for

  quantum meruit.   The Trustee claims the Entity Defendants have refused to

  return uncompensated benefits received from the Debtor, and it is inequitable for

  them to retain the benefit of the Debtor's services to the detriment of the Debtor's

  creditors.   *Id.* at ¶¶159-164.

- **Liability on Open Account -** Count 7 asserts a claim against NAIC for liability

  on an open account.   The Trustee claims NAIC has refused to return to the

  Trustee sums reflected as due and owing on the Debtor's books.   *Id.* at 165-167.[19]

### 2.        The Motion to Dismiss

As noted *supra*, the Motion to Dismiss seeks dismissal on two separate grounds.   First,

the Entity Defendants argue that the Court lacks personal jurisdiction over them because they

lack "any meaningful connections to the United States, and the handful of contacts that do exist

(with respect to only two of the three [Entity] Defendants) are not related to the Trustee's claim."

Motion to Dismiss, at 1.   Second, the Defendants argue that the Amended Complaint fails to

articulate facts satisfying "the elements of the litany of claims the Trustee has asserted in the

---

[19]  The Trustee asserts that the Debtor's books and records reflect a balance owing from NAIC of "at least
$133,000 … as of the Petition Date."   *See* Amended Complaint at ¶113.

Amended Complaint."  *Id.*

### a.  Lack of Personal Jurisdiction over Entity Defendants

With respect to their jurisdictional argument, the Entity Defendants assert that none of

them has ever maintained any offices, held any bank accounts, or owned any property in the

United States, although GRI provided industrial equipment to the Debtor upon its formation for

use in its operations but asserts that it abandoned any claim to the equipment prior to the

Debtor's bankruptcy filing.  *Id.,* at 2-4.   MMI and GRI assert that they have never conducted

business in the United States, are not authorized to conduct business in the United States, and do

not have an agent authorized to accept service in the United States.  *Id.*, at 2-3.[20]  NAIC also

argues that it does not have an agent to accept service in the United States, but unlike MMI and

GRI, does not assert that it has never conducted business here; rather, it acknowledges that it was

party to the smelting agreement with the Debtor from 2012 to 2017, but asserts that other than

this relationship, it has not solicited or conducted any business in the United States.  *Id.,* at 4.

The Entity Defendants each state that they have never employed anyone in the United States

other than Mr. Kemper, who serves as vice president of each from New York.  *Id.,* at 2-4.

With respect to the Debtor, the Defendants assert that its two principal employees were

industry experts who managed the Debtor's operations from its facility in Pennsylvania.  *Id.*, at

7.   Their compensation and benefits were paid by the Debtor, and they were not employed by

---

20  GRI acknowledges that "Other than its ownership interest in [the Debtor], GRI's only other
connection to the United States was its retention of a New York based investment bank (Brock Capital of
New York) to raise and structure $408 million required to manufacture a pig iron plant in Quebec, Canada
(the 'Pig Iron Plant Project'), which will be owned and operated by GRI … In connection with its planned
development of the Pig Iron Plant Project, GRI has engaged in limited, preliminary discussions with no
more than five U.S.-based steel companies."  *Id.,* at 3.   GRI goes on to note that the discussions were
brief, did not result in negotiations or agreements, and had nothing to do with the Debtor's business.  *Id.*

and did not provide services to any of the Entity Defendants.  *Id.*   Aside from the officer-level

positions held by Mr. MacKenzie, Mr. Kemper, and Ms. Tannous, no employee or other

representative of the Entity Defendants had any managerial input or control with respect to the

Debtor's operations.  *Id.*

As discussed *infra,* the Entity Defendants argue that, given their lack of connection to the

forum, this Court may not exercise either specific or general personal jurisdiction over them.

### b.      Failure to State a Claim

With respect to their argument that the Amended Complaint fails to state a claim against

them, the Defendants take each Count, other than Count 7, in turn.

With respect to Count 1, for breach of fiduciary duty against Mr. MacKenzie and aiding

and abetting that breach against the Entity Defendants, the Defendants argue that the Count itself

is devoid of any factual allegations, and the balance of the Amended Complaint's allegations that

could "even conceivably relate to the Trustee's fiduciary duty claim" for breach of the duty of

care fail to make any specific reference to Mr. MacKenzie, other than the allegation that he

ceased to fund the Debtor, and fail to overcome the protection of the business judgment rule.  *Id.*

32-33.   Likewise, the Defendants argue, the Amended Complaint alleges no facts permitting the

inference that Mr. MacKenzie was unjustly enriched at the expense of the Debtor.  *Id.* at 34.

Finally, the Defendants argue the Amended Complaint makes no allegations regarding actions

each Entity Defendant took to aid and abet Mr. MacKenzie's alleged breaches of fiduciary duty,

instead making general allegations of conspiracy.  *Id.* at 36.

With respect to Count 2, asserting a veil piercing or alter ego claim against GRI and

MMI, the Defendants assert the Amended Complaint sets forth only bare legal conclusions and

attaches documents that do not support the propositions the Trustee makes.  *Id.* at 38.   Rather,

they argue, the Amended Complaint does not make factual allegations permitting the inference

that the Debtor was undercapitalized, that it failed to adhere to corporate formalities, that GRI

and MMI intermingled their affairs with the Debtor's or used it to perpetrate a fraud.  *Id.*

With respect to Count 3, asserting a fraudulent conveyance claim against NAIC and an

aiding and abetting fraudulent conveyance claim against GRI and MMI, the Defendants note that

the Amended Complaint only references §548 generally, evidently seeking avoidance under both

§548(a)(1)(A), for intentionally fraudulent transfers, and §548(a)(1)(B), for constructively

fraudulent transfers.  *Id.*   The Defendants argue the Amended Complaint fails to allege

sufficient facts to support a claim under either subsection.  *Id.* at 40.   The Trustee fails to plead

an intentional fraud claim under §548(a)(1)(A), which claim must meet the heightened pleading

standards for fraud under Federal Rule of Civil Procedure 9(b), because she does not allege any

facts (specific or otherwise) that NAIC transferred property of the Debtor with intent to hinder,

delay, or defraud present or future creditors of the Debtor, and instead appears to base the claim

on the Trustee's own calculations of what the Debtor should have charged for services provided

to NAIC based on the cost value and tax life of the Furnaces.  *Id.* at 41.   The Trustee fails to

plead a constructive fraud claim under §548(a)(1)(B) because she does not allege facts

supporting an inference that the Debtor received less than reasonably equivalent value for a

transfer that *resulted in* (a) insolvency, (b) undercapitalization, or (c) inability to pay debts when

due.  *Id.* at 43.[21]   Finally, the Trustee does not plead an aiding and abetting fraudulent transfer

---

[21]  The Defendants also argue that, to the extent the Trustee is seeking avoidance of a transfer made for
the benefit of an insider pursuant to §548(a)(1)(B)(iv), she does not and cannot allege that any transfer to
NAIC resulted from an employment contract, as required by that subsection, and that she alleges the
Debtor provided services to NAIC in the ordinary course of its business, which is fatal to a

claim against GRI and MMI because (i) a trustee can only bring an aiding and abetting claim

under §541 of the Bankruptcy Code, not §544 as the Trustee seeks to do by the Amended

Complaint, (ii) Pennsylvania law does not recognize a claim for aiding and abetting a fraudulent

transfer, and (iii) the Amended Complaint does not plead facts in support of such a claim against

GRI and MMI, even if it existed.

With respect to Counts 4 and 5 of the Amended Complaint, which assert claims against

the Entity Defendants based on purported common enterprise or joint venture liability, the

Defendants first argue that Pennsylvania does not recognize common enterprise theory as a

grounds for recovery against a related entity, and while federal courts have split on whether to

recognize the theory, this Court should not do so, given Pennsylvania courts' unwillingness to

recognize common enterprise theory and reluctance to pierce the corporate veil generally.  *Id.* at

45-46.   The Defendants further argue that even if the common enterprise claim were legally

cognizable, the Trustee has not alleged, and cannot allege, facts supporting the elements of such

a claim, including that the ownership of the Entity Defendants is identical, that they had unified

administrative control, or that involuntary creditors of the Debtor existed.  *Id.* at 46.

With respect to Count 6 of the Amended Complaint, asserting a quantum meruit claim

against the Entity Defendants, the Entity Defendants argue that the Amended Complaint, while

alleging in conclusory fashion that the Defendants received benefits and/or services from the

Debtor for which they did not remit full value, fails to allege facts in support.  *Id.* at 47-48.   The

Defendants also argue that the Amended Complaint's assertion that the Debtor should have been

paid $2,000,000 per year in fees based on the Trustee's "arbitrary formula" does not permit an

---

§548(a)(1)(B)(iv) claim.  *Id.* at 44.

inference of unjust enrichment, and the Trustee does not and cannot allege that $5.14 million in fees the Debtor received constitutes an "unconscionable injustice," as is required for a finding of quantum meruit.  *Id.* at 48.

The Motion to Dismiss does not address or make any argument with respect to dismissal of Count 7 of the Amended Complaint under Rule 12(b)(6), which asserts that NAIC has an unpaid balance owing to the Debtor of at least $133,000.

### 3.        The Trustee's Objection to the Motion to Dismiss

In his objection to the Motion to Dismiss (the "Objection"),[22] the Trustee restates many of the allegations in the Amended Complaint, but also asserts that testimony at the 341 meeting of creditors established certain other or supporting facts.   Objection at ¶¶10, 11.

### a.        Trustee's Response Regarding Lack of Jurisdiction

The Trustee argues the facts asserted establish that the Entity Defendants and the Debtor "were all controlled by an identifiable core of persons with defendant MacKenzie at the head." *Id.* at ¶11.   The Trustee argues that personal jurisdiction exists over each of the Entity Defendants because:

- GRI purposely availed itself of Pennsylvania law and personal jurisdiction in Pennsylvania by forming the Debtor in Pennsylvania, sending equipment to Pennsylvania, hiring staff in Pennsylvania, and incurring debt in Pennsylvania. *Id.*, at ¶13.

- NAIC purposely availed itself of Pennsylvania law and personal jurisdiction in Pennsylvania by entering into transactions with the Debtor, a Pennsylvania

---

[22] Adv. Pro. Docket No. 55.

company, that required the Debtor to conduct substantial work and incur debt in

Pennsylvania.   NAIC failed to pay the Debtor all sums due for the work, causing

harm in Pennsylvania to the Debtor's unpaid creditors.   *Id.*, at ¶14.

- MMI purposely availed itself of Pennsylvania law and personal jurisdiction in

    Pennsylvania by "by serving no purpose other than to hold the interests of GRI

    and reap the benefits of GRI's and NAIC's activities in Pennsylvania," and by

    "regularly advertis[ing] its control over the debtor in Pennsylvania through its

    marketing materials."   *Id.*, at ¶15.

The Trustee argues that the Defendants had extensive contacts with the United States in

creating the Debtor "and operat[ing] it in the Commonwealth for their own benefit," and "clearly

directed conduct toward creditors located in Pennsylvania in the United States."   *Id.*, at ¶¶22, 25.

To establish those contacts and conduct, the Trustee asserts that, contrary to the Defendants'

argument that the Amended Complaint misuses isolated quotes from unrelated documents, that

she "clearly … may use circumstantial evidence to support her *prima facie* case," and that the

Defendants' explanations for the referenced quotes in the Motion to Dismiss merely create issues

of material fact to be decided following discovery.   *Id.*, at ¶20.

Based on the Amended Complaint's allegations, which the Court must take as true for

purposes of the Motion to Dismiss, the Trustee argues that the Defendants' minimum contacts

with the forum have been established.   *Id.*, at ¶26.   The Trustee requests, however, that if the

Court remains doubtful, she should be permitted limited jurisdictional discovery to confirm the

Amended Complaint's allegations, which the Trustee asserts is required before the case can be

dismissed for lack of personal jurisdiction.   *Id.*, at ¶¶27, 28.

**b.    Trustee's Response Regarding Failure to State a Claim**

With regard to the Trustee's claims for breach of fiduciary duty, veil-piercing, alter-ego, and common enterprise/joint venture liability, the Trustee cites Pennsylvania law regarding factors relevant to disregarding the corporate shield and argues that the Amended Complaint outlines facts supporting her *prima facie* case.  *Id.*, at ¶¶33, 38.   According to the Trustee, the Amended Complaint outlines facts supporting the conclusion that Mr. MacKenzie stopped funding the Debtor despite the valuable services the Debtor provided to NAIC, "preferred one entity over the other and in so doing breached his duty of loyalty," and took actions not in the best interest of the Debtor or GRI (presumably as its majority or sole shareholder), but instead acted based on NAIC's interest.   *Id.*, at ¶39.   The Trustee further responds that the circumstantial evidence "suggests that all defendants benefited from Mr. MacKenzie directing the Debtor to operate in a thinly capitalized fashion" and that the Entity Defendants "actively encouraged, funded, or otherwise assisted him in connection with the misconduct."   *Id.*, at ¶40.

With respect to the Trustee's fraudulent transfer claim, the Trustee asserts that the Amended Complaint sets forth facts that articulate a viable fraudulent transfer claim, notwithstanding the Defendants' argument that the claim is meritless and based on an arbitrary calculation of the amount the Debtor should have charged for its services to NAIC.  *Id.*, at ¶47. With respect to the Trustee's quantum meruit claim, the Trustee asserts the Amended Complaint clearly sets forth facts supporting her allegation that the Defendants directly or indirectly received benefits and/or services from the Debtor for which they failed to pay the full value. *Id.*, at ¶48.   With respect to the Trustee's claim for amounts NAIC still owes for services the Debtor provided and invoiced, she asserts that the Amended Complaint states a clear claim for

more than $130,000 based on the Debtor's books and records. *Id.*, at ¶42.[23]    Although the

Counts in the Amended Complaint do not include or reference a claim against Mr. MacKenzie

under either a participation theory of liability or a concerted tortious conduct theory, the Trustee

also asserts in the Objection that the Amended Complaint states a claim against him under one or

both theories of recovery. *Id.*, at ¶¶43-46.[24]

Finally, the Trustee argues that to the extent the Defendants attempt to counter the well-

pleaded facts in the Amended Complaint with the declaration of Mr. MacKenzie (the

"MacKenzie Declaration") attached to their Motion to Dismiss, this is a premature motion for

summary judgment because "[t]he facts in this case are complicated, with many factual twists

and turns," best developed through discovery and a trial. *Id.*, at ¶¶50,51.    As with her response

to the Defendants' jurisdictional argument, the Trustee argues that the Court has discretion to

defer consideration of the Motion to Dismiss until additional discovery is taken in order to create

fuller record. *Id.*, at ¶56.

### 4.    The Defendants' Reply to the Trustee's Objection

The Defendants filed a reply to the Objection (the "Reply"),[25] and argue that it fails to

come forward with sufficient facts to establish personal jurisdiction over the Entity Defendants.

Reply, at 1.    The Defendants assert that the "laundry list of 'facts" in the Objection, unsupported

by the record, and vague references to testimony during the meeting of creditors, without

---

[23] As noted *supra*, however, the Motion to Dismiss does not address Count 7 of the Amended Complaint
in its arguments that dismissal is warranted under Rule 12(b)(6) for failure to state a claim.

[24] This argument is meritless.    The Trustee cannot amend the Amended Complaint's allegations, claims,
or theories of liability through briefing on a motion to dismiss. *See Dade v. Gaudenzia DRC, Inc.*, 2013
WL 3380592, at *2, n.1 (E.D. Pa. July 8, 2013).

[25] Adv. Pro. Docket No. 56.

provision of the transcripts or specific page-line references, are insufficient to combat the

contradictory allegations in the Motion to Dismiss, which are supported by a declaration and

documents. *Id.*, at 2-3.

The Defendants also argue that the Trustee fails to address the arguments in the Motion

to Dismiss with respect to the legal deficiency of all Counts of the Complaint other than Count 2,

asserting a veil piercing or alter ego claim against GRI and MMI, and therefore concedes those

portions of the motion as unopposed. *Id.*, at 4.[26]   With respect to Count 2, the Defendants assert

that the Objection does nothing more than repeat the Amended Complaint's deficient and

conclusory allegations, without supporting facts. *Id.*

Finally, the Defendants argue that the Trustee's request for additional discovery should

be denied because she has had the opportunity to conduct extensive discovery already, including

in-person meetings with Mr. MacKenzie and others, responses to document requests, and access

to the Debtor's accounting software. *Id.*, at 5.   Notwithstanding that discovery, the Defendants

argue, the Trustee's Objection to the Motion to Dismiss is substantively identical to one filed

earlier in the case, and the Trustee should not be given another opportunity to conduct additional

discovery in an attempt to defeat this Motion to Dismiss. *Id.*

## III.   DISCUSSION

### A.   Standard of Review for Motion to Dismiss Under Rule 12(b)(2)

The plaintiff bears the burden of proving that jurisdiction is proper by affidavits or other

---

[26] The Court rejects this argument at the outset.   Though the Objection's response to the Defendants'
12(b)(6) argument is not organized in a count-by-count fashion, it clearly addresses why each count states
a claim.   Therefore, the Court finds that the Trustee has not conceded the Defendants' arguments by
failing to respond to them.

competent evidence. *Sides v. Harley-Davidson, USA*, 2013 WL 2061371, at \*2 (E.D. Pa. May 15, 2013) (quoting *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 329 (3d Cir. 2009)). When, however, the court does not hold an evidentiary hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction by establishing with reasonable particularity sufficient contacts between the defendant and the forum. *Id.* (internal citations omitted).[27]   The plaintiff presents a *prima facie* case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Id.* (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992)). The plaintiff, however, may not rely on the bare pleadings alone, and must respond to a motion to dismiss for lack of jurisdiction with "actual proofs, not mere allegations." *Id.* (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 68 n.9 (3d Cir. 1984)); *Lawrence v. DOAR, Inc.*, 2022 WL 2435619, at \*1 n.1 (E.D. Pa. Mar. 31, 2022) (same).   Conclusory allegations in a complaint in support of personal jurisdiction are insufficient. *Zecco v. Solaris Hotel and Resorts, Inc.*, 820 F. Supp. 962, 963 (E.D. Pa. 1993) (citing *Time Share Vacation Club*).

In determining whether personal jurisdiction over a defendant exists, the Court examines the relationship between the defendant, the forum, and the litigation. *Id.*   That examination is

---

[27] In bankruptcy cases the "forum" is the United States in general, not the particular forum state, and the Court therefore applies a "national contacts" standard to determine whether the Court's exercise of personal jurisdiction over the Defendants is proper. *In re Uni-Marts, LLC*, 399 B.R. 400, 406-407 (Bankr. D. Del. 2009) (noting that Bankruptcy Rule 7004(d) allows nationwide service of process and therefore is a statutory exception to the general rule that *in personam* jurisdiction over non-resident defendants is governed by the general jurisdiction of the forum state's courts); *see also Roche Holdings*, 292 F.3d at 369-370 (finding that a federal court's personal jurisdiction may be assessed on the basis of the defendant's national contacts when the plaintiff's claim rests on a federal statute authorizing nationwide service of process).

guided by the Fifth Amendment's Due Process Clause, which imposes "'a general fairness test

incorporating *International Shoe's* requirement that certain minimum contacts exist between the

non-resident defendant and the forum such that maintenance of the suit does not offend

traditional notions of fair play and substantial justice.'" *In re Uni-Marts, LLC*, 399 B.R. 400,

406 (Bankr. D. Del. 2009) (quoting *Max Daetwyler Corp. v. Meyer*, 762 F.2d 290, 293 (3d Cir.

1985), which cited *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95

(1945)).

 A court must possess one of two forms of personal jurisdiction over each defendant

brought before it. *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 382

(M.D. Pa. 2009). Where the plaintiff's cause of action is related to or arises out of the

defendant's contacts with the forum, the court is said to exercise "specific jurisdiction," and may

only do so when the defendant has constitutionally sufficient minimum contacts with the forum.

*Roche Holdings Ltd.*, 292 F.3d at 368-369; *Chocolate Confectionary*, 641 F. Supp. 2d at 382. In

contrast, general jurisdiction is established when a defendant's contacts with the forum are

"continuous and systemic," and the contacts need not be specifically related to the underlying

cause of action for the exercise of personal jurisdiction to be proper. *Roche Holdings Ltd.*, 292

F.3d at 369, n.1.

 Exercise of general jurisdiction requires a strong nexus between the defendant's essential

business activities and its contact with the forum. *Chocolate Confectionary*, 641 F. Supp. 2d at

383-384. The defendant must maintain perpetual, abiding ties with the forum; in the corporate

context, courts have historically applied general jurisdiction to organizations that hire employees,

hold real property, maintain bank accounts, apply for business licenses, advertise, and regularly

solicit sales within the relevant forum.  *Id.* at 383-384 ("In sum, general jurisdiction requires the defendant to possess[] qualitative contacts with the forum that constitute 'the bread and butter of the defendant's daily business, such that its activities approximate business presence in the forum." (internal citations and quotations omitted).

General jurisdiction over a foreign corporation may alternatively exist where the plaintiff demonstrates that "the out of forum corporation either controls or is controlled by an in-forum affiliate to such a degree that the two corporations operate as a single, amalgamated entity.  This fusion of corporate identity – often described as an alter ego relationship – allows the court to impute the domestic entity's activities to the foreign organization when analyzing jurisdictional contacts."  *Id.* at 383 (citing *Lucas v. Gulf & W. Indus.*, 666 F.2d 800, 805-06 (3d Cir. 1981)). However, when one corporation is a subsidiary of the other, the level of control necessary to substantiate an alter ego relationship must exceed the usual supervision that a parent exercises over its subsidiary; more "intrusive control" is needed, and courts evaluate whether that control exists based on a number of considerations:

    (a)    The parent owns all or a significant majority of the subsidiary's stock;

    (b)    Commonality of officers or directors;

    (c)    The group possesses a unified marketing image, including common branding of products;

    (d)    Corporate insignias, trademarks, and logos are uniform across corporate boundaries;

    (e)    Group members share employees;

    (f)    The parent has integrated its sales and distribution systems with its subsidiaries';

(g)     The corporations share or exchange managerial or supervisory personnel;

(h)     The subsidiary performs business functions that would ordinarily be handled by a

parent corporation;

(i)     The parent uses the subsidiary as a marketing division or as an exclusive

distributor; and

(j)     The parent exercises control or provides instruction to the subsidiary's officers

and directors.

*Id.* at 384-385.   No one aspect of the relationship between two corporations controls the

analysis, and a court may consider any evidence bearing on their functional interrelationship.

*Id.* at 385.   However, ownership of a subsidiary over which personal jurisdiction exists does not,

without control, establish jurisdiction over the parent.   *Kehm Oil*, 537 F.3d at 298-299;

*Architettura Inc. v. DSGN Assocs. Inc.*, 2018 WL 3428705, at *3 (N.D. Tex. July 13, 2018).

The determination of whether specific jurisdiction exists is governed by a three-part

inquiry: "First, the defendant must have purposely directed its activities at the forum.   Second,

the litigation must arise out of or relate to at least one of those activities.   And third, if the prior

two requirements are met, a court may consider whether the exercise of jurisdiction otherwise

comports with fair play and substantial justice."   *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496

F.3d 312, 317 (3d Cir. 2007) (internal citations and quotations omitted); *see also Kehm Oil Co. v.*

*Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008).   Physical presence in the forum is not required

for purposeful activities in the forum, but a deliberate targeting of the forum is.   *Sandy Lane*

*Hotel*, 496 F.3d at 317 (finding that foreign defendant's mailing of newsletters and brochures and

phone calls with Pennsylvania residents constituted purposeful contact with Pennsylvania

23

forum).   With respect to whether the claims arise out of or relate to a defendant's purposeful activities in the forum, the Third Circuit warns against any sort of mechanical rule to this "necessarily fact-intensive inquiry", but instead favors "the reciprocity principle upon which specific jurisdiction rests.   With each purposeful contact by an out-of-state resident, the forum state's laws will extend certain benefits and impose certain obligations.   Specific jurisdiction is the cost of enjoying the benefits."   *Id.* (internal citations omitted).   In determining whether exercising jurisdiction is reasonable, the Third Circuit looks to factors identified by the Supreme Court: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies, and the procedural and substantive interests of other nations."   *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) and *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

### B.    Standard of Review for Motion to Dismiss Under Rule 12(b)(6)

Like Rule 12(b)(2), Rule 12(b)(6) requires the Court to accept as true all well-pleaded factual allegations of the Amended Complaint, construe disputed facts in a light most favorable to the Plaintiff, and determine whether, under any reasonable reading of the Amended Complaint, the Trustee may be entitled to relief.   *In re Reinford*, 2010 WL 4026806, at *1 (Bankr. E.D. Pa. Oct. 7, 2010) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).   Dismissal is appropriate only if, accepting as true all facts alleged in the Amended Complaint, the Trustee has not pleaded enough facts to state a claim to relief that is plausible on its face.   *Id.*   (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.

24

2d 929 (2007)).   However, "threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009)).

While the Amended Complaint need not include detailed factual allegations, it does need

to go beyond "a formulaic recitation of the elements of a cause of action … Factual allegations

must be enough to raise a right to relief above the speculative level."   *In re Reading*

*Broadcasting, Inc.*, 390 B.R. 532, 548 (Bankr. E.D. Pa. 2008) (quoting *Twombly*).   This Court's

role "is limited to determining whether, based upon the allegations of the complaint, accepted as

true with all reasonable inferences, the plaintiff is entitled to offer evidence in support of the

claims, and not whether the plaintiff will ultimately prevail upon the merits.   Resolution of that

issue requires that the complaint contain sufficient averments to provide fair notice to the

defendant of the claims asserted, and that the factual allegations suggest the required elements of

the individual claims.   The standard does not require that a plaintiff plead every fact upon which

his claim is based." *Id.* (internal citations omitted).

In determining motions to dismiss under Rule 12(b)(6), the Third Circuit has articulated a

two-part test to be employed.   First, the factual and legal elements of a claim should be

separated, accepting all well-pleaded facts as true but disregarding any legal conclusions.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).   Second, the Court must then

determine whether the facts alleged in the Amended Complaint are sufficient to show that the

Trustee has a plausible claim for relief.   *Id.* at 212.   The Amended Complaint must do more

than allege the Trustee's entitlement to relief; it must show such an entitlement with its pleaded

facts.   *Id.*   Where the well-pleaded facts do not permit the Court to infer more than the mere

possibility of misconduct, the Amended Complaint has not shown the Trustee is entitled to relief.

*Id.* The plausibility determination is "a context-specific task that requires the reviewing court to

draw on its judicial experience and common sense." *Id.*

### C. Resolution of Trustee's Secondary Arguments Regarding Conversion to Summary Judgment Motion and Additional Discovery Needed

Before turning to the merits of the Motion to Dismiss, the Court first addresses the

Trustee's arguments that (a) by attaching the MacKenzie Declaration to the Motion to Dismiss, it

is converted to a summary judgment motion, and (b) the Defendants are attempting to short-

circuit discovery on complicated facts, which would be better developed through full discovery

followed by summary judgment motion practice or trial.

### 1. The Documents Attached to the Motion to Dismiss Do Not Necessarily Convert It to a Summary Judgment Motion

The MacKenzie Declaration (and the other documents) attached to the Motion to Dismiss

do not necessarily convert the Motion to Dismiss into a motion for summary judgment if they are

central to the Amended Complaint and their contents are not in dispute. *Pension Benefit Guar.*

*Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993), *cert. denied,* 510 U.S.

1042 (1994) (a court may consider an indisputedly authentic document that a defendant attaches

as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document); *Lubin v.*

*TIAA, FSB (In re Coles)*, 2020 Bankr. LEXIS 1327, at *4 (Bankr. N.D. Ga. May 21, 2020)

(citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); *Brooks v. Blue Cross & Blue*

*Shield of Fla., Inc.*, 116 F.3d 1364 (11th Cir. 1997).[28]   To the extent any documents the

---

[28]  Moreover, even where there is a dispute as to the authenticity of documents attached to a motion to
dismiss, that dispute does not convert the motion into one for summary judgment if reliance on those
documents is not necessary to rule on the merits of the motion.  *Id.* (citing *Hopkins v. PHH Mortg. Corp.*,
2019 U.S. Dist. LEXIS 135556, at *2 n.3 (N.D. Ga. May 30, 2019), *report and recommendation adopted*

Defendants attached are either not central to the Amended Complaint or their contents are disputed, the Court can still adjudicate the Motion to Dismiss without converting it to a summary judgment motion if the Court does not consider them.   *Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 477 n.7 (Bankr. E.D. Pa. 2008).   The Court may also consider "documents the complaint incorporates by reference or are otherwise integral to the claims, information subject to judicial notice, and matters of public record such as orders and other materials in the record of the case."   *Harris v. Trs. of Conneaut Lake Park, Inc. (In re Trs. of Conneaut Lake Park, Inc.)*, 563 B.R. 784, 789 (Bankr. W.D. Pa. 2017) (internal citations omitted).

Thus, to the extent the statements in the MacKenzie Declaration and the other documents attached to the Motion to Dismiss are not disputed and central to the Amended Complaint's claims, the Court may consider them in resolving the Motion to Dismiss.   On the other hand, to the extent they are disputed or not central to the Amended Complaint, the Court may not consider them without converting the Motion to Dismiss to a summary judgment motion.   That is not an issue here, however, because the Court reaches resolution of the Motion to Dismiss without needing to rely on the MacKenzie Affidavit, and therefore need not covert the motion to one for summary judgment.

### 2.    The Court Will Not Defer Ruling Pending Additional Discovery

According to the Trustee, the Court should exercise its discretion to defer consideration of the Motion to Dismiss until a full record of facts can be developed through discovery.   The Court agrees with the Defendants that the Trustee has had sufficient opportunity to pursue

---

*by* 2019 U.S. Dist. LEXIS 186835 (N.D. Ga. Sept. 6, 2019)).

discovery and allege facts supporting both personal jurisdiction over the Entity Defendants and

the claims she seeks to assert against all Defendants.   Where she has already had the benefit of

discovery, a determination by the Court that the Amended Complaint is deficient does not entitle

her to take further discovery in an attempt to correct those deficiencies.   *See, e.g., Rice v.

Electrolux Home Prods., Inc.*, 2020 WL 247284, at *10 (M.D. Pa. Jan. 15, 2020) (where a

plaintiff has had the opportunity to conduct jurisdictional discovery and then fails to make out a

*prima facie* case of personal jurisdiction, courts are entitled to deny the plaintiff's request for

further jurisdictional discovery); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D. C.

Cir.1983) (holding that it is not an abuse of discretion for a court to deny a request for additional

jurisdictional discovery where the party has already had ample opportunity to conduct

discovery).   Where the Trustee has already had the benefit of discovery, and particularly in light

of the fact that the Trustee was already given leave to amend the Complaint to better plead its

factual allegations, further discovery is not justified.

### D.     The Amended Complaint Pleads Sufficient Facts to Establish the Court's Personal Jurisdiction Over Mr. MacKenzie and NAIC, But Not GRI or MMI

The Court's personal jurisdiction over Mr. MacKenzie, as the director and officer of the

Debtor, a Pennsylvania corporation, has already been established by this Court's prior order.

*See* §I n.5, *supra.*   Accepting the well-pleaded factual allegations of the Amended Complaint as

true, as the Court is required to do at this stage, the Trustee has also established that the Court

has personal jurisdiction over NAIC.   It does not, however, have personal jurisdiction over GRI

or MMI.

### 1.     Personal Jurisdiction over NAIC

The Amended Complaint does not plead facts that would establish general personal

28

jurisdiction over NAIC, which requires systemic and continuous contacts with this forum strongly connected to NAIC's essential business functions.   The Amended Complaint alleges only that NAIC breached contractual and other obligations to the Debtor in connection with the melt testing the Debtor performed for it.   It does not allege other contracts NAIC entered into in this forum, either with the Debtor or otherwise, or other contacts that could be considered systemic and continuous.   As discussed *supra,* general jurisdiction in the corporate context typically involves hiring employees, holding real property, maintaining bank accounts, applying for business licenses, advertising, and/or soliciting sales within the relevant forum.   *Chocolate Confectionary*, 641 F. Supp. 2d at 383-384.   Apart from the Trustee's argument that the Entity Defendants should be conflated with the Debtor, discussed *infra*, the Amended Complaint does not allege NAIC engaged in these activities.   The employment of a lone individual, Mr. Kramer, based in the United States does not establish systemic and continuous contacts with the forum strongly connected to NAIC's essential business functions.

The Amended Complaint does, however, plead facts establishing specific personal jurisdiction over NAIC.   NAIC entered into a five-year contract with the Debtor whereby the Debtor's Furnaces in Pennsylvania would be used to undertake large-scale melt testing for NAIC.   The Debtor then performed the services under the contract in Pennsylvania.   NAIC paid the Debtor over $5,000,000 in fees for the services performed in Pennsylvania.   NAIC admits these facts, but argues that putting aside its relationship with the Debtor, it did not solicit or conduct any business in the United States.   That argument might hold water with respect to general jurisdiction, but these well-pleaded facts are sufficient to establish specific personal jurisdiction over NAIC.

NAIC's contractual undertaking with the Debtor satisfies the three-part inquiry for determining whether specific personal jurisdiction exists.   First, NAIC contracted with a company located in this forum to have services performed for it in this forum, creating payment and other obligations in this forum.   This constitutes actions by NAIC to purposely direct certain of its activities toward the forum.   *Controlled Metals, Inc. v. Non-Ferrous Int'l Corp.*, 410 F. Supp. 339, 343 (E.D. Pa. 1976) ("A contractual obligation is a sufficient basis for a finding that a corporation had purposely availed itself of the privilege of acting within the Commonwealth. Here … the agreement entered into by defendant has 'a realistic economic impact on the commerce of this Commonwealth', and, in addition, this cause of action arises directly from the contacts between the plaintiff and defendant.") (internal citations omitted); *Trachtman v. T.M.S. Realty & Fin. Servs.*, 393 F. Supp. 1342, 1345 (E.D. Pa. 1975) (personal jurisdiction existed over foreign defendant that "voluntarily came into Pennsylvania and entered into a contract in Pennsylvania with a Pennsylvania resident.   The defendant fully participated in the Pennsylvania transactions which arose out of the contract.   The obligations entered into by the defendant had a realistic economic impact on the commerce of Pennsylvania and the defendant should have reasonably foreseen that the transaction would have such consequences and, thus, purposely availed itself of the privilege of acting within Pennsylvania.").

Second, the Trustee's claims against NAIC in the Amended Complaint arise from or relate to NAIC's activities in the forum – namely, the use of the Debtor and its testing services for NAIC's purposes.   *Trachtman*, 393 F. Supp. at 1345 (contract that constituted activities directed toward forum also formed the basis for the claims against foreign defendant).   While some of the Trustee's claims sound in contract and some in tort, all of those claims arise from

30

NAIC's contractual agreement to use the Debtor for its testing needs.   Applying the Third

Circuit's guidance in *Sandy Lane Hotel,* NAIC enjoyed the benefits of using a Pennsylvania

corporation located in Pennsylvania for its testing services, and specific jurisdiction can be

considered one of the costs of enjoying the benefit.

Finally, exercising personal jurisdiction over NAIC based on its activities in this forum

and claims related to those activities "comports with fair play and substantial justice," because

notwithstanding NAIC being a Canadian company based in Canada, it could expect when

contracting with the Debtor to conduct testing operations in this forum that it could be found

responsible in this forum for liabilities arising from those activities.   *Controlled Metals*, 410 F.

Supp. at 343 ("Since the agreement was to be performed in Pennsylvania, defendant should have

anticipated that a breach of the agreement on its part would have consequences in this state …

Pennsylvania has an interest in protecting a resident by asserting jurisdiction over a foreign

corporation whose contact with the state caused damage to a Pennsylvania resident.").[29]   The

Defendants have not articulated any specific burden on NAIC or procedural or substantive

interest of Canada that would override NAIC's deemed expectation or the United States' interest

in adjudicating disputes involving debtors in bankruptcy court.

---

[29] While the Defendants argue that the determination as to whether the exercise of personal jurisdiction comports with notions of fair play and substantial justice bears added significance in the context of an international defendant, citing *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1987)), it is not inconsistent with those notions to exercise personal jurisdiction over an international defendant that has intentionally directed its activities, contractually or otherwise, towards the United States forum. *See, e.g., Pinker v. Roche Holdings Ltd.*, 292 F.3d 361 (2002) (in finding personal jurisdiction existed over Swiss defendant, reasoning that "Just as solicitation of business in the forum state is generally sufficient to establish personal jurisdiction over the defendant for claims arising out of injuries to purchasers within the forum state, so too is personal jurisdiction appropriate where a foreign corporation has directly solicited investment from the American market.   A foreign corporation that purposely avails itself of the American securities market has adequate notice that it may be haled into an American court for fraudulently manipulating the market.").

### 2.    Personal Jurisdiction over GRI and MMI

As with NAIC, the Amended Complaint's factual allegations do not establish general personal jurisdiction over either of GRI or MMI.   The Trustee does not make any factual allegations that would support a finding that either entity had continuous and systemic presence in the United States strongly connected to their essential business activities.   There is no allegation that either had physical or legal presence in the United States or did business in the United States.   As with NAIC, the employment of Mr. Kramer does not establish systemic and continuous presence in the forum.   Nor does GRI's formation of the Debtor as a Pennsylvania corporation.   The only way the Amended Complaint's allegations could establish general personal jurisdiction over GRI and MMI is to conflate them with NAIC and the Debtor, as discussed *infra*.

The Amended Complaint does not make factual allegations that support a finding of specific personal jurisdiction over GRI or MMI either.   The Amended Complaint does not allege that MMI or GRI was a party to or directly received the benefit of the testing agreement between NAIC and the Debtor.[30]   Nor does the Amended Complaint allege any facts regarding any other activity that would constitute GRI or MMI deliberately targeting this forum with their business activities.   Rather, the Amended Complaint's allegations against GRI and MMI assert that they made general representations in marketing or investment materials regarding their relationship with the Debtor and/or its assets, and that they and the other Defendants failed to observe

---

[30]  The Trustee alleges that "Defendants also engaged in a transaction that created rights and obligations among citizens of the forum and resulted in significant ties with the forum.   This Defendants deliberately and personally directed significant activities toward the state."   Amended Complaint, at ¶15.   The Trustee, however, does not point to any transaction GRI and MMI engaged in, and the only transaction that is the subject of the Amended Complaint is the testing agreement NAIC and the Debtor entered into.

corporate formalities with respect to the Debtor.   These do not constitute specific factual

allegations establishing purposeful, targeted activities in this forum.   Because the first prong of

the three-part test used for determining specific personal jurisdiction is not established, the Court

need not address the second and third prongs.

> **3.      Personal Jurisdiction Over Entity Defendants Based on Purported
> Control Over the Debtor**

The Amended Complaint, both in its allegations and in several of its Counts, seeks to

merge the Entity Defendants with the Debtor based on an alter ego or affiliated enterprise theory.

This is relevant to whether personal jurisdiction over the Entity Defendants exists because, as

discussed *supra*, general personal jurisdiction may exist where the out-of-forum corporation

controls the in-forum affiliate to such a degree that they operate as a single, amalgamated entity,

allowing imputation of the domestic entity's activities to the foreign affiliate.   *Chocolate

Confectionary*, 641 F. Supp. at 383.

In evaluating whether the Entity Defendants controlled the Debtor to such a degree as to

form a single entity, the Court's task is rendered more difficult by the significant number of

conclusory allegations and statements of law, rather than fact, found in the Amended Complaint.

*See In re Lyondell Chem. Co.*, 543 B.R. 127, 147 n.71 (Bankr. S.D.N.Y. 2016) (conclusory

allegations are insufficient to establish personal jurisdiction).   The Trustee repeatedly makes

conclusory allegations that such control existed.   The Court, however, will view what well-

pleaded facts there are in light of the factors the *Chocolate Confectionary* court identified for

considering whether general personal jurisdiction exists over a parent entity based on an alter ego

theory.

33

  **a.**  **Did the Entity Defendants own all or a significant majority of the Debtor's stock?**

  The Amended Complaint alleges the Debtor was "wholly owned … by Defendants," but later alleges that GRI was the sole shareholder.  *Id.* at ¶¶14, 55.   Notwithstanding this inconsistent pleading, there does not appear to be any dispute that GRI was the sole or majority shareholder of the Debtor at all relevant times.  *See* footnote 11, *supra*.

  **b.**  **Was there a commonality of officers or directors?**

  The Amended Complaint alleges that the Debtor and Entity Defendants "all have interlocking officers and directors including [Mr.] MacKenzie, Kevin Kemper, Jean-Marc MacKenzie, Albert LeBlanc, and Lina Tannous."  *Id.* at ¶46.   The Court finds this allegation conclusory – it provides no detail as to which individuals served in which positions for which entity and at what time, and therefore the Court has no ability from the allegation to evaluate whether and to what degree there was a commonality of officers and directors.   However, as discussed in §II.A *supra*, taking the allegations of the Amended Complaint together with the clarifying responses in the Motion to Dismiss, the Court concludes that Mr. MacKenzie was an interlocking officer and director of the Debtor and all three Entity Defendants, while Mr. Kemper and Ms. Tannous were interlocking officers of the Debtor and all three Entity Defendants.[31]

  **c.**  **Did the group possess a unified marketing image, including common branding of products?**

  The Amended Complaint makes no non-conclusory allegations that the Debtor and Entity Defendants shared marketing images or common branding of products, although it does allege in

---

[31] The Amended Complaint also alleges that the Debtor did not maintain adequate corporate records, hold director or shareholder meetings, or record resolutions.  *Id.* at ¶70.

conclusory fashion that they "were all involved in the same line of business."   *Id.*, at ¶47.

> ### d.     Were corporate insignias, trademarks, and logos uniform across corporate boundaries?

The Amended Complaint makes no allegations that the Debtor and Entity Defendants shared insignias, trademarks, or logos.

> ### e.     Did the Debtor and the Entity Defendants share employees?

As discussed *supra,* the Amended Complaint alleges and/or the Motion to Dismiss acknowledges that Mr. MacKenzie, Mr. Kemper, and Ms. Tannous (after 2014) served in officer roles for both the Debtor and the Entity Defendants.

> ### f.     Did any or all of the Entity Defendants integrate their sales and distribution systems with the Debtors?

The Amended Complaint does not make any non-conclusory allegations that the Entity Defendants integrated their sales and distribution systems with the Debtors.   Rather, the Amended Complaint alleges that the Defendants used the Debtor for NAIC's testing needs almost exclusively.   The Amended Complaint also alleges, however, that NAIC did not have the furnaces required to conduct that testing itself, that this was done pursuant to a contract between the Debtor and NAIC, and that NAIC paid the Debtor approximately $5.2 million for those services over a 5-year period.   As such, the Court finds that the Amended Complaint does not allege the Debtor's testing system or business function was "integrated" with NAIC's or the other Entity Defendants, but instead alleges that it was contractually used for purposes of NAIC's testing needs.

> ### g.     Did the corporations share or exchange managerial or supervisory personnel?

As discussed *supra,* the Amended Complaint alleges and/or the Motion to Dismiss

acknowledges that Mr. MacKenzie, Mr. Kemper, and Ms. Tannous (after 2014) served in officer roles for both the Debtor and the Entity Defendants.

> **h.  Did the Debtor perform business functions that would ordinarily be handled by an Entity Defendant?**

Other than the Debtor's contractual performance of melting services for NAIC, the Amended Complaint does not allege the Debtor performed any services or functions that should or would have been handled by the Entity Defendants.

> **i.  Did the Entity Defendants use the Debtor as a marketing division or as an exclusive distributor?**

The Amended Complaint alleges the Debtor was formed with the intention of having it perform testing services for NAIC, and that the Debtor's revenue was derived almost exclusively from the melt testing service provided to NAIC.   The Court views this as an allegation that the Debtor was the equivalent of a testing division for NAIC.

> **j.  Did the Entity Defendants exercise control or provide instruction to the Debtor's officers and directors?**

This final consideration is at the heart of the Trustee's personal jurisdiction theory; she alleges that the Entity Defendants controlled the Debtor but relies largely on conclusory or inconsistent allegations to do so.   For example, the Trustee asserts the Debtor and the Entity Defendants had "unified administrative control" because "as the marketing materials indicate, the Defendants share employees, prepare consolidated financial statements and tax filings and operate as a consolidated unified administrative unit."   Amended Complaint, at ¶55.   The marketing materials attached to the Amended Complaint, however, do not support this allegation, and common management, in itself, does not establish that corporate separateness should be disregarded.   *In re Penn. Cent. Sec. Litig.*, 335 F. Supp. 1026, 1035 (E.D. Pa. 1971).

The Court therefore finds it conclusory.[32]

Likewise, the Trustee alleges the Debtor and Entity Defendants share similar or supplementary business functions, again citing the "marketing materials" attached to the Amended Complaint. *Id.* While the Amended Complaint clearly alleges that NAIC and the Debtor have complementary business functions that resulted in the Debtor performing testing services for NAIC, there are no allegations supporting the same with respect to GRI or MMI. GRI's ownership of majority equity stakes in NAIC and the Debtor does not establish that GRI has a similar business function, and MMI is not even a majority owner of GRI.[33] The Trustee also alleges that the Entity Defendants "stopp[ed] funding, turn[ed] over all Debtor's assets to the landlord, and fil[ed] for bankruptcy." *Id.* These allegations, which the Court believes go to the Trustee's assertion of control by the Entity Defendants, are conclusory and without any detail or context.[34] In reviewing them the Court is left to question to what the Trustee is referring, which does not meet the test for supporting the conclusion that GRI and MMI controlled the Debtor.

---

[32] In fact, the Debtor's financial statement included in Exhibit C to the Amended Complaint is not consolidated.

[33] Undermining the Trustee's assertion that MMI has a similar business function to the Debtor and other Entity Defendants is her argument in the Objection that personal jurisdiction exists over MMI because it serves no purpose other than to hold the interests of GRI, which suggests no independent business purpose that is similar to the Debtor's melt testing business.

[34] The same is true with respect to the Trustee's allegations at ¶¶ 58 and 100 of the Amended Complaint that Defendants (a) denied Debtor access to funds, (b) executed agreements with others, including the landlord, that intentionally interfered with the Debtor's operation, (c) refused to provide Debtor with material information about the affairs of the alleged joint venture with the Defendants, and (d) removed Debtor from its facilities by transferring all the assets. The Amended Complaint is devoid of any details or context in support of these allegations. Simply put, the Court is unsure what the Trustee is referencing in making these allegations, and they are not well-pleaded factual allegations in support of a finding that the Defendants controlled the Debtor.

The Amended Complaint's allegations do not point to any specific direction, instruction, or control the Entity Defendants exerted over the Debtor, other than the fact that they had a shared President and director and two other shared officers.[35]   The allegation that the Debtor's near-exclusive customer for its melting services was NAIC, when paired with the allegation that NAIC paid the Debtor $5.2 million for such services, does not establish that the Defendants controlled the Debtor.   Moreover, the assertion that the Defendants specifically and intentionally formed the Debtor as a testing facility, research and development facility and division for their business operations, not only does not in itself establish control over the Debtor, but is also inconsistent with the Trustee's allegation that the Debtor was undercapitalized from the start; it is incongruent to allege that the Debtor was established for the sole purpose of serving the Entity Defendants' needs, but that they undercapitalized the Debtor and thereby inhibited its ability to perform such services.   Therefore these allegations, each of which must be taken as true, undermine the Trustee's allegation that GRI and MMI controlled the Debtor for their own purposes.[36]

Ultimately, even where the Amended Complaint's well-pleaded allegations are taken as

---

[35] The Trustee alleges at ¶80 that Mr. MacKenzie "took active part in the commission of the foregoing misrepresentations and is personally liable therefor."   Although the Court is uncertain what misrepresentations the Trustee is referring to in this paragraph, it seems clear that she alleges Mr. MacKenzie, as President and a director of each, orchestrated the Entity Defendants' alleged misuse of the Debtor.   The Amended Complaint, however, avers no specific action, directive, or instruction by Mr. MacKenzie.

[36] The Amended Complaint also asserts (i) that the Defendants represented in 2013 that they would provide financing for the Debtor, (ii) that GRI entered into transactions "utilizing assets of the Debtor as if they were GRI assets," (iii) that GRI and NAIC marketed the Debtor's assets as if they belonged to them, and (iv) that NAIC and GRI did not include the Debtor in a non-disclosure agreement with a potential buyer of the Debtor's assets. *Id.* at ¶¶17-20.   These do not establish that GRI or MMI controlled the Debtor; the Trustee makes no connection between these alleged marketing representations and acts and control over the Debtor, its operations or finances.

true, they do not establish that GRI and MMI controlled the Debtor to a degree that warrants

collapsing them as one entity, thereby conferring this Court with general personal jurisdiction

over GRI and MMI.   When boiled down to its essence, the Amended Complaint relies on the

overlapping officer and director roles of Mr. MacKenzie, the overlapping officer roles of Mr.

Kemper and Ms. Tannous, and the Trustee's allegation that the Debtor should have paid more for

the services it rendered to NAIC.   Together, these do not establish that GRI and MMI controlled

the Debtor.[37]   As such, the Trustee's alter ego theory of personal jurisdiction over the Entity

Defendants fails.

> **E.**     **Because the Court Lacks Personal Jurisdiction Over GRI and MMI, the
> Court Will Not Address Dismissal Pursuant to Rule 12(b)(6) as to Those
> Defendants**

The Court's determination that it lacks personal jurisdiction over GRI and MMI renders

moot their argument that the Amended Complaint fails to state a claim against them.   *See, e.g.,*

*Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("Not only does logic compel

initial consideration of the issue of jurisdiction over the defendant - a court without such

jurisdiction lacks power to dismiss a complaint for failure to state a claim - but the functional

difference that flows from the ground selected for dismissal likewise compels considering

jurisdiction and venue questions first.   A dismissal for lack of jurisdiction or improper venue

does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to

state a claim upon which relief can be granted with prejudice."); *Traisman v. Khmelnitsky*, 2020

U.S. Dist. LEXIS 95127, at *22 (D.N.J. June 1, 2020) (dismissal for failure to state a claim is

---

[37]  Moreover, MMI was not even the majority owner of the entity (GRI) that owned the Debtor, a fact that
undermines the allegation that MMI controlled the Debtor.

rendered moot by determination that dismissal is appropriate for lack of personal jurisdiction);

*O'Toole v. MyPlace Dev. SP. Z.O.O. (In re Sledziejowski)*, 2016 Bankr. LEXIS 3791, at *37-*38

(Bankr. S.D.N.Y. Oct. 21, 2016) (concluding that, given its finding that it lacked personal

jurisdiction over the defendants, it would be inappropriate to reach other grounds for dismissal

raised by them); *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2016 U.S. Dist. LEXIS 125991, at *26

(M. D. La. Sept. 15, 2016) (defendant's motion to dismiss for failure to state a claim was

rendered moot by the court's granting of motion to dismiss for lack of personal jurisdiction);

*Clark v. Maijer, Inc.*, 376 F. Supp. 2d 1077, 1083 (D.N.M. 2004) ("If a court determines that

personal jurisdiction is lacking as to some or all of the defendants, all other claims and issues

related to those claims brought against those defendants are rendered moot.").

The Court therefore will not address whether the Amended Complaint fails to state a

claim against GRI and MMI, and all Counts against them will be dismissed for lack of personal

jurisdiction.

### F.   The Amended Complaint Fails to State a Claim Against Mr. MacKenzie for Breach of Fiduciary Duty or NAIC for Aiding and Abetting a Breach of Fiduciary Duty

The Amended Complaint fails to state a claim against Mr. MacKenzie for breach of

fiduciary duty.   Breach of fiduciary duty claims are subject to a notice pleading standard.   *In re*

*Covenant Partners, L.P.*, 531 B.R. 84, 94 (Bankr. E.D. Pa. 2015).   The Debtor was a

Pennsylvania corporation, and in Pennsylvania a plaintiff alleging a breach of fiduciary duty

must plead the following elements: (1) the existence of a fiduciary relationship; (2) that the

defendant negligently or intentionally failed to act in good faith and solely for the benefit of the

plaintiff in all matters for which he or she was employed; (3) that the plaintiff suffered injury;

and (4) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bringing

about the plaintiff's injuries. *Truefit Solutions, Inc. v. Bodies Done Right, LLC*, 2019 WL

7187406, at *6 (W.D. Pa. Dec. 26, 2019); *Nordetek Envt'l, Inc. v. RDP Technologies, Inc.*, 862

F. Supp. 2d 406, 423-24 (E.D. Pa. 2012).

      The Amended Complaint does not allege facts that, when taken as true, establish that Mr.

MacKenzie negligently or intentionally failed to act in good faith and solely for the benefit of the

Debtor.   As noted *supra,* the factual allegations must suggest the required elements of a claim.

*Reading Broadcasting*, 390 B.R. at 548.   The Amended Complaint makes almost no targeted

allegations at all regarding anything Mr. MacKenzie did or did not do in breach of his fiduciary

duties as a director and officer of the Debtor.   The Court's review of the Amended Complaint's

factual allegations reveals only two paragraphs, out of 167 numbered paragraphs, that make any

specific allegation regarding Mr. MacKenzie's actions.   Those allegations are that Mr.

MacKenzie "took active part in the commission of the foregoing misrepresentations" and that he

"breached his fiduciary duties owed the Debtor's creditors by ceasing to fund the Debtor."

Amended Complaint, at ¶¶80, 81.   Neither of these isolated allegations form a basis for a breach

of fiduciary duty claim.   First, the Court is unclear to what "foregoing misrepresentations" the

Trustee is referring; the preceding well-pleaded factual allegations of the Amended Complaint do

not allege misrepresentations.   Therefore, this allegation does not meet even a notice pleading

standard.   Likewise, the allegation that Mr. MacKenzie ceased funding the Debtor is utterly

devoid of any context or factual detail that permits the Court or the Defendants to understand to

what the Amended Complaint is referring in making this allegation.   Again, this does not meet

the notice pleading standard.   Moreover, as the Defendants argue, Count 1 itself does not make

any additional factual allegations regarding Mr. MacKenzie's alleged breach of fiduciary duty

that clear the claim over the notice pleading hurdle.[38]

The Court therefore finds that the Amended Complaint fails to adequately plead facts

supporting a breach of fiduciary duty claim against Mr. MacKenzie.   As a result, the Amended

Complaint fails to state a claim for aiding and abetting a breach of fiduciary duty claim against

NAIC, since the breach of a fiduciary duty is a threshold requirement for an aiding and abetting

claim.   *Chicago Title Ins. Co. v. Lexington & Concord Search & Abstract, LLC*, 513 F. Supp. 2d

304, 318 (E.D. Pa. 2007) (the elements of a claim for aiding and abetting a breach of fiduciary

duty claim are (i) a breach of fiduciary duty owed to another, (ii) knowledge of the breach by an

aider and abettor, and (iii) substantial assistance or encouragement by the aider and abettor in

effecting that breach) (citing *Koken v. Steinberg*, 825 A.2d 723, 732 (Comm. Ct. Pa. 2003)).

The Court finds that Count 1 fails to state a claim against Mr. MacKenzie or NAIC and

will be dismissed.

### G.   The Amended Complaint States a Claim for Avoidance of Fraudulent Transfers Against NAIC

Count 3 of the Amended Complaint asserts a fraudulent transfer claim against NAIC

pursuant to §544 and 548 of the Bankruptcy Code.   The allegations in Count 3 appear to assert

both an intentional fraud claim and a constructive fraud claim, *see* Amended Complaint ¶¶ 140-

142, and therefore the Court will address whether the Amended Complaint adequately states a

---

[38] As noted *supra,* the Trustee argues that circumstantial evidence "suggests that all defendants benefited from Mr. MacKenzie directing the Debtor to operate in a thinly capitalized fashion" and that the Entity Defendants "actively encouraged, funded, or otherwise assisted him in connection with the misconduct." Objection, at ¶40.   It is true that circumstantial evidence may get a complaint across the plausibility threshold, but the complaint must first plead facts that get the claim to possibility.   *See Value Drug Co. v. Takeda Pharms., U.S.A., Inc.*, 2022 U.S. Dist. LEXIS 58574, at *11 (E.D. Pa. Mar. 30, 2022)).   Here, the scant allegations the Amended Complaint does make with respect to Mr. MacKenzie do not state even a possible claim for breach of fiduciary duty.

claim for either, under both the Bankruptcy Code or the Pennsylvania Uniform Voidable

Transfer Act ("PUVTA").[39]

### 1.      Intentionally Fraudulent Transfer Claim

Section 548(a)(1)(A) of the Bankruptcy Code requires a plaintiff to allege that (i)

transfers were made within two years before the Debtor's bankruptcy filing, and (ii) the debtor

voluntarily or involuntarily made the transfer with actual intent to hinder, delay, or defraud any

entity to which the debtor was or became, on or after the transfer was made, indebted.   11

U.S.C. §548(a)(1)(A); *Beskrone v. Opengate Capital Grp., LLC (In re Pennysaver USA

Publishing, LLC)*, 602 B.R. 256, 270 (Bankr. D. Del. 2019).   Section 5104(a)(1) of PUVTA is a

parallel provision under Pennsylvania law, allowing for the avoidance of a transfer by a debtor

"if the debtor made the transfer or incurred the obligation … with actual intent to hinder, delay,

or defraud any creditor of the debtor."   12 Pa. C.S.A. §5104(a)(1).   Claims of actual fraud are

evaluated under Federal Rule of Civil Procedure 9(b), which requires a party alleging fraud or

mistake to state with particularity the circumstances constituting fraud.   *Beskrone*, 602 B.R. at

270-271.   However, in the bankruptcy context, Rule 9(b) should be interpreted liberally,

---

[39] Pursuant to §544(b)(1) of the Bankruptcy Code, the Trustee is authorized to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title." 11 U.S.C. § 544(b)(1).   Although the Trustee has not stated in the Amended Complaint under which state's law she is asserting a claim pursuant to her §544 strong-arm powers, the Debtor was a Pennsylvania corporation, and therefore the Trustee may assert fraudulent transfer claims under sections 5104 and 5105 of PUVTA.   *See In re Polichuk*, 506 B.R. 405, 417 (Bankr. E.D. Pa.2014) (acknowledging that §544(b) "allows the bankruptcy trustee to stand in the shoes of an actual creditor" to assert a cause of action under PUFTA, the predecessor to PUVTA); 5 Collier on Bankruptcy ¶548.01[4] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2008) (stating that under §544, the Trustee may "step into the shoes of a creditor of the debtor, and utilize applicable state law to avoid a transaction").   Naming a specific creditor holding an allowable unsecured claim is not necessary to state a cause of action under §544(b).   *In re David Cutler Indus., Ltd.*, 471 B.R. 110, 114 n.8 (Bankr. E.D. Pa. 2012).

particularly when a trustee is bringing the action.   *Id.*

PUVTA lists certain "badges of fraud" to assist courts in determining whether actual

fraud is present.   This nonexclusive list includes whether:

(1)    the transfer or obligation was to an insider;

(2)    the debtor retained possession or control of the property transferred after
the transfer;

(3)    the transfer or obligation was disclosed or concealed;

(4)    before the transfer was made or obligation was incurred, the debtor had
been sued or threatened with suit;

(5)    the transfer was of substantially all the debtor's assets;

(6)    the debtor absconded;

(7)    the debtor removed or concealed assets;

(8)    the value of the consideration received by the debtor was reasonably
equivalent to the value of the asset transferred or the amount of the
obligation incurred;

(9)    the debtor was insolvent or became insolvent shortly after the transfer was
made or the obligation was incurred;

(10)   the transfer occurred shortly before or shortly after a substantial debt was
incurred; and

(11)   the debtor transferred the essential assets of the business to a lienor who
transferred the assets to an insider of the debtor.

12 P.S.   5104(b).   These same factors are used by courts when determining actual intent under

§548(a)(1)(A) of the Bankruptcy Code.   *Dershaw v. Ciardi (In re Rite Way Elec., Inc.)*, 510

B.R. 471, 481 (Bankr. E.D. Pa. 2014).[40]

---

[40] *See also Liebersohn v. Zisholtz (In re Martin's Aquarium)*, 225 B.R. 868, 875 (Bankr. E.D. Pa. 1998)
(badges of fraud for purposes of §548(a)(1)(A) are similar to PUVTA's and include: (1) lack or
inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties;
(3) the retention or possession, benefit or use of the property in question, although title exists in another
entity; (4) the financial condition of the party sought to be charged both before and after the transaction in

The Amended Complaint does not make any factual allegations regarding the enumerated badges of fraud 2 to 7, 10 or 11.   The Trustee does adequately plead the first badge of fraud, *i.e.*, that the transfers were to an insider, as NAIC and the Debtor were affiliates, both majority or wholly owned by GRI.   *See* 11 U.S.C. §§101(2) and (31)(E) (defining insider to include affiliates, and affiliates to include entities with a common shareholder exceeding 20% of outstanding shares); 12 Pa. C. S. §5101, cmt. 8 (PUVTA's definition of insider is derived from the Bankruptcy Code).   However, the fact that a transfer has been made to an affiliated corporation has not been regarded as sufficient to warrant avoidance when unaccompanied by other evidence of fraud; rather, it warrants close scrutiny of other circumstances, including the nature and extent of the consideration exchanged.   *Universal Computer Consulting, Inc. v. Pitcairn Enters.*, 2005 U.S. Dist. LEXIS 18401, at *24 (E.D. Pa. Aug. 26, 2005).

The Debtor also pleads the eighth badge of fraud, *i.e.,* insufficiency of consideration. When evaluating a complaint on a motion to dismiss for failure to state a claim, the Court must be attentive to context.   *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).   The Trustee alleges that the Debtor provided approximately $2,000,000 of value per year in melt-testing services to NAIC, but received only $1,480,000 from NAIC in 2016, and approximately $1,000,000 in 2017.   Amended Complaint, at ¶36-37.   Overall, the Amended Complaint alleges, in the five years preceding its bankruptcy filing, the Debtor provided NAIC approximately $14,000,000 of value but received approximately $5,200,000 from NAIC in

---

question; (5) conveyance of all of the debtor's property; (6) secrecy of the conveyance; (7) existence of a trust or trust relationship between the debtor and the person to whom the property was conveyed; (8) the existence or cumulative effect of a pattern or series of transactions or a course of conduct after the incurring debt, onset of financial difficulties, or pendency or threat of suit by creditors; (9) the instrument affecting the transfer suspiciously states it is in fact bona fide; (10) the debtor makes a voluntary gift to a family member; and (11) the general chronology of events and transactions under inquiry.).

return.  *Id.,* at ¶38.   The Court finds that the allegations of the Amended Complaint adequately

plead, in context, that the Debtor received inadequate consideration for the services provided to

NAIC.

The other enumerated badge of fraud the Amended Complaint pleads is the ninth, *i.e.,* the

Debtor's insolvency.   Excluding repetitive allegations, the Amended Complaint alleges that the

Debtor was never solvent (¶8), the Debtor was unable to pay its debts as they came due (¶26),

the Debtor's available cash was insufficient to fund its operations (¶63), and the Debtor was

insolvent on the date the transfers were made or became insolvent as a result of the transfers

(¶144).   The Court finds that these allegations, at the motion to dismiss stage, sufficiently plead

insolvency.  *See Giuliano v. Delta Air Lines, Inc. (In re TransVantage Solutions, Inc.)*, 2016

Bankr. LEXIS 3672, at *17-*18 (Bankr. D.N.J. Oct. 6, 2016) (allegations that debtor's debts

exceeded its assets sufficed to allege insolvency on a motion to dismiss).   Insolvency is

generally a factual determination not appropriate for resolution on a motion to dismiss.

*Beskrone*, 587 B.R. at 459; *Zazzali v. Mott (In re DBSI, Inc.)*, 447 B.R. 243, 248 (Bankr. D. Del.

2011).

The Amended Complaint adequately pleads three badges of fraud.   Even the presence of

a single badge of fraud can cast suspicion on the transferor's intent, but the confluence of several

in one transaction generally is sufficient to establish an actual intent to defraud, particularly at

the motion to dismiss stage*.  See In re Roman Cath. Diocese of Harrisburg*, 640 B.R. 59, 74

(Bankr. M.D. Pa. 2022).   As such, the Trustee's intentional fraud claims against NAIC under

§548(a)(1)(A) and §5104 of PUVTA survive the Defendants' Motion to Dismiss for failure to

state a claim.

### 2.       Constructively Fraudulent Transfer Claim

Claims asserting a constructively fraudulent transfer must meet the more relaxed

plausibility pleading standard of Federal Rule of Civil Procedure 8(a).   *See, e.g., Forman v.*

*Gittleman (In re OpenPeak, Inc.)*, 2020 Bankr. LEXIS 3463, at *79 (Bankr. D.N.J. Dec. 10,

2020).   The Amended Complaint's constructively fraudulent transfer claims meet that more

liberal standard.

Section 548(a)(1)(B) of the Bankruptcy Code addresses claims for constructively

fraudulent transfers, and requires that the Trustee establish that (1) the Debtor had an interest in

property; (2) the interest was transferred within two years of the Debtor's bankruptcy filing; (3)

the Debtor received less than reasonably equivalent value in exchange for the transfer; and (4)

either: (i) the Debtor was insolvent at the time of the transfer; or (ii) became insolvent as a result

thereof; or (iii) intended to incur, or believed that it would incur, debts that would be beyond its

ability to pay them as they became matured.   11 U.S.C. §548(a)(1)(B).

The parallel provisions of PUVTA are §§5104(a)(2) and 5105.   Section 5104(a)(2)

applies to creditors whose claims arose either before or after the transfer and provides that a

transfer for less than reasonably equivalent value is fraudulent if the debtor: (i) was engaged or

was about to engage in a business or a transaction for which the remaining assets of the debtor

were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or

believed or reasonably should have believed that the debtor would incur, debts beyond the

debtor's ability to pay as they became due.   12 Pa. C. S. §5104(a)(2).   In contrast, §5105

applies only to creditors whose claims arose before the transfer and provides that a transfer is

fraudulent if the debtor made the transfer or incurred the obligation without receiving a

reasonably equivalent value in exchange for the transfer or obligation and the debtor was

insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

12 Pa. C. S. §5105.

As noted *supra,* the Amended Complaint alleges that in 2016 the Debtor received

$1,480,000 for test services provided to NAIC, and in 2017 received approximately $1,000,000,

when it should have received approximately $2,000,000 per year based on the fair value of the

test services and the rental value of the Debtor's facility.   Amended Complaint, at ¶¶36-37.   In

the five years preceding its bankruptcy filing, the Debtor provided NAIC approximately

$14,000,000 of value but received approximately $5,200,000 from NAIC in return.   *Id.,* at ¶38.

These allegations adequately plead transfers by the Debtor for less than reasonably equivalent

value.   Although the Defendants argue that the Trustee's assertion of fair value is based on an

arbitrary calculation using tax life and operating costs, that is an issue fairly left for trial.

The Defendants argue that the Amended Complaint "fails to provide any facts supporting

any of the four financial conditions necessary for a [§548(a)(1)(B)] claim – i.e., that [the

Debtor's] provision of services to NAIC (i) resulted in [the Debtor's] insolvency, (ii) prevented

[the Debtor] from engaging in a specific business transaction by leaving it without sufficient

capital or (iii) intended the debtor to incur debts beyond its ability to pay."   Motion to Dismiss,

at 43.   This argument leaves out one of the avenues for pleading a constructively fraudulent

transfer claim – that the debtor was insolvent on the date the transfer was made.   *See* 11 U.S.C.

§548(a)(1)(B); 12 Pa. C. S. §5105.   Contrary to the Defendants' argument, by its plain terms the

statute does not require the transfer itself to have rendered the debtor insolvent.   *See, e.g., Indus.*

*Enters. of Am. v. Tabor Acad. (In re Pitt Penn Holding Co.)*, 2011 Bankr. LEXIS 3554, at *29

(Bankr. D. Del. Sept. 16, 2011) (a constructive fraudulent transfer claim requires sufficiently pleaded facts that the debtor was insolvent or became insolvent when a transfer occurred).

As discussed *supra,* the Trustee has adequately pleaded the Debtor's insolvency to overcome a motion to dismiss.   The Amended Complaint alleges that the Debtor was never solvent (¶8), the Debtor was unable to pay its debts as they came due (¶26), the Debtor's available cash was insufficient to fund its operations (¶63), and the Debtor was insolvent on the date the transfers were made or became insolvent as a result of the transfers (¶144).   Where insolvency generally is a factual determination not appropriate for resolution on a motion to dismiss, these allegations sufficiently plead the Debtor's insolvency, particularly under Rule 8(a)'s more relaxed standard.

As such, the Trustee's constructive fraud claims against NAIC under §548(a)(1)(B) and §§5104(a)(2) and 5105 of PUVTA survive the Defendants' Motion to Dismiss for failure to state a claim.

### H.    The Amended Complaint Fails to State a Claim Against NAIC for Common Enterprise Liability or Joint Venture Liability

Counts 4 and 5 of the Amended Complaint assert contractual and fiduciary liability claims against NAIC based on the alleged existence of a common enterprise or joint venture among the Defendants.

### 1.    The Amended Complaint Does Not State a Claim for Common Enterprise Liability

With respect to common enterprise liability, the Amended Complaint attempts to allege facts satisfying the five-factor test for enterprise liability set forth in *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 695 (Pa. Super. Ct. 1998).   *See* Amended Complaint at, ¶¶55, 92-96, 99.   In that case, while acknowledging that the common enterprise theory of liability had

not yet been adopted in Pennsylvania, the court observed that under it, "two or more corporations are treated as one because of identity of ownership, unified administrative control, similar or supplementary business functions, involuntary creditors, and insolvency of the corporation against which the claim lies." *Id.* at 695.   Without addressing any of the other requirements, the *Miners* court concluded that identity of ownership was not present because the majority shareholder of each corporation sought to be combined owned 60% of the stock, with the remaining 40% owned by other individuals or entities. *Id.*

In the Motion to Dismiss, the Defendants argue that under *Miners,* the ownership structure of the corporations must be identical, and because the Trustee has not and cannot allege identical ownership between the Debtor and the Entity Defendants, the common enterprise theory is not applicable.   Motion to Dismiss, at 45-46.   The Defendants also argue that the Amended Complaint fails to allege any facts in support of an inference that the Entity Defendants had unified administrative control or that the Debtor had involuntary creditors. *Id.,* at 46-47.

After the Parties submitted their pleadings on the Motion to Dismiss, the Pennsylvania Supreme Court issued a decision in *Mortimer v. McCool*, 255 A.3d 261 (Pa. 2021) that provides guidance on the viability of a common enterprise claim under Pennsylvania law and alters the framework for evaluating such a claim as articulated in *Miners*.   The court rejected a rigid, factor-based approach to the imposition of enterprise liability, including a requirement that there be an absolute identity of ownership among affiliate corporations or the existence of involuntary creditors. *Id.* at 279.   Instead, after surveying the law of jurisdictions that allow for enterprise liability claims, the court reasoned that the fundamental concern for a viable claim of enterprise

50

liability is that it be used "only in cases of great injustice and inequity." *Id.* at 284.

The court then developed two baseline considerations for application of the enterprise liability doctrine. First, the court found that "enterprise liability in its most logical form requires an alter ego component, and it is this that *at least substantial common ownership* ensures … And the prospect of wrongdoing in that scenario depends upon the actions (or omissions) of the common owner to exploit limited liability while failing to observe the separation between the corporations." *Id.* The court, however, viewed it as a mistake to allow control or domination to serve as a proxy for wrongdoing. *Id.* at n.90. Therefore, wrongdoing as a threshold requirements remains at the heart of stating a claim for common enterprise liability.

Second, the court established that enterprise liability must be "triangular", meaning that it must first "run up from the debtor corporation to the common owner, and from there down to the targeted sister corporation(s)." *Id.* at 285. This, the court stated, is accomplished by the mechanism of "reverse-piercing", whereby the claimant against the owner of a corporation must establish the owner's misuse of the corporate form to protect the owner's personal assets against some debt. *Id.* Once liability is imposed on the owner, it can be imposed upon a commonly owned corporation through reverse piercing. *Id.* at n.91 (quoting *Nursing Home Consultants, Inc. v. Quantum Health Servs., Inc.*, 926 F. Supp. 835, 840 n.12 (E.D. Ark. 1996)).

Viewing these two considerations together, the Pennsylvania Supreme Court articulated the threshold test for application of enterprise liability: "[T]he question, as formulated above, reduces to whether triangular piercing is warranted. This, in turn, requires at *least* substantially common ownership." *Id.* at 287. In the case before it, the court determined that neither consideration was satisfied, and therefore the doctrine did not apply. *Id.* In so doing, it stated

that application of the doctrine by the lower courts consistent with the framework the court set

out would need to be "mindful of the salutary benefits of limited liability, and with an eye always

toward the interests of justice." *Id.* at 288.

This Court therefore looks to the *Mortimer* decision's framework to determine whether

the Amended Complaint adequately pleads the baseline considerations for an enterprise liability

claim under Pennsylvania law: (i) was there substantially common ownership between the

Debtor and NAIC; and, if so, (ii) was there wrongdoing by the common owner to exploit the

Debtor's limited liability while failing to observe the separation between the corporations, such

that triangular veil-piercing is warranted.   The five factor-test articulated in *Miner* no longer

controls the analysis.

Here, the first consideration is met, as the Trustee has pleaded that the Debtor was

wholly-owned by GRI, and that GRI owned a 60% interest in NAIC.   Amended Complaint, at

¶¶45, 55.   The second consideration, however, is not.   As discussed in §III.D.3(j) *supra*, the

Amended Complaint's allegations do not point to any specific direction, instruction, or control

GRI exerted over the Debtor, other than the fact that they had a shared President and director and

two other shared officers.   Even ownership of all the stock of a corporation coupled with

common management is not in itself sufficient to establish that the purpose of the corporate

entity should be disregarded.   *See Penn Cent. Sec. Litig.*, 335 F. Supp. at 1035.   Rather, it must

be coupled with allegations of GRI's wrongdoing in exploiting the Debtor's corporate form.

The allegation that NAIC, an entity also separate and distinct from GRI and which GRI did not

wholly own, did not pay sufficient consideration for services the Debtor provided may be

sufficient to state certain claims against NAIC, but it does not sufficiently allege wrongdoing by

52

GRI that would warrant triangular veil-piercing.   The same is true of the Trustee's allegations at ¶¶58 and 100 of the Amended Complaint that Defendants (a) denied Debtor access to funds, (b) executed agreements with others, including the landlord, that intentionally interfered with the Debtor's operation, (c) refused to provide Debtor with material information about the affairs of the alleged joint venture with the Defendants, and (d) removed Debtor from its facilities by transferring all the assets.   As discussed at note 34 *supra,* the Amended Complaint is devoid of any details, context, or evidence in support of these allegations, and does not allege that GRI in particular directed or orchestrated them.   The Amended Complaint fails to sufficiently allege that GRI engaged in wrongdoing to manipulate or exploit the Debtor's corporate form for GRI's benefit, which under *Mortimer* is a prerequisite to triangular veil-piercing.

Where the Pennsylvania Supreme Court has cautioned that enterprise liability is to be restrained and used only in cases of great injustice and inequity, the Amended Complaint's well-pleaded facts do not establish the doctrine's baseline requirements.   The Court therefore finds that Counts 4 and 5 of the Amended Complaint fail to state a claim for common enterprise liability against NAIC.

### 2.     The Amended Complaint Fails to State a Joint Venture Liability Claim Against NAIC

In order to sufficiently plead a claim for breach of a joint venture or breach of fiduciary duties with respect to a joint venture, a plaintiff must first plead the elements of a joint venture. *Seitz v. 6130 West, LLC (In re Joey's Steakhouse, LLC)*, 474 B.R. 167, 190 (Bankr. E.D. Pa. 2012).   Certain factors are essential to the existence of a joint venture: (1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials, or money; (2) profits must be shared among the parties; (3) there must be

a joint proprietary interest and right of mutual control over the subject matter of the enterprise;

and (4) usually, there is a single business transaction rather than a general and continuous

transaction.  *Id.* (citing *Snellbaker v. Herrmann*, 462 A.2d. 713, 716 (Pa. Super. 1983)).

Likely aware of these factors, the Trustee has made certain allegations that touch on

them.   The Amended Complaint alleges that the Debtor "was created as a joint venture with

[sic] to provide testing and research development services for Defendants' businesses," "the

Defendants with Debtor had an expectation of profits from the enterprise," "the Defendants with

Debtor each had a duty to share profits and losses from the enterprise," and that "Each defendant

directly participated in the functioning of the Debtor, enjoyed personal gain from the operation

of the Debtor and each is responsible for Debtor's debts."   Amended Complaint, at ¶¶94, 97, 98,

151.   Putting aside whether these allegations are conclusory, the Amended Complaint does not

plead any contribution NAIC made to an alleged joint venture with the Debtor.   Rather, it pleads

that NAIC paid the Debtor $5,139,000 in fees *in exchange for services* rendered to NAIC.

Amended Complaint, at ¶30.   Payment for services rendered are not a "contribution" for

establishing the existence of a joint venture, and the Amended Complaint makes no other

allegation, conclusory or otherwise, that NAIC made a contribution to the purported joint

venture.   Without alleging well-pleaded facts that, if true, would establish the existence of a

joint venture, the Amended Complaint's claim for joint venture liability against NAIC fails.

*See, e.g., Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2004 U.S. Dist.

LEXIS 17154, at *20 (E.D. Pa. Aug. 25, 2004) (where non-conclusory allegations regarding

existence of joint venture failed to establish, *inter alia*, contribution requirement, dismissal was

warranted).

I.      **The Amended Complaint State a Claim Against NAIC for Quantum Meruit**

Quantum meruit is a synonym for unjust enrichment, and in order to prove such a claim a

plaintiff must prove the elements of unjust enrichment.   *Sundance Rehab. Corp. v. Kingston*

*SNF, LLC*, 2014 U.S. Dist. LEXIS 197376, at \*35 (M.D. Pa. Feb. 28, 2014) (citing, *inter alia,*

*Mitchell v. Moore*, 729 A.2d 1200, 1202 (Pa. Super. Ct. 1999)).   The elements of an unjust

enrichment claim under Pennsylvania law are (i) benefits conferred on the defendant, (ii)

appreciation of such benefits by defendant, and (iii) acceptance and retention of such benefits

under such circumstances that it would be inequitable for defendant to retain the benefit without

payment of value.   *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828,

833 (Pa. Super. 2008) (quoting *Styger v. Hugo*, 619 A.2d 347 (Pa. Super. 1993)).

The Amended Complaint adequately pleads each of the elements of unjust enrichment

under Pennsylvania law for a claim against NAIC.   It asserts that NAIC received the benefit of

melt testing services provided by the Debtor.   It asserts that the value of those services was

approximately $2,000,000 per year, but that NAIC never paid more than $1,600,000.   These

allegations suffice to state a claim for quantum meruit against NAIC.   The Defendants argue

that the Trustee cannot establish that NAIC's payment of over $5,000,000 to the Debtor

constitutes an "unconscionable injustice", as required for a quantum meruit claim, but the Court

disagrees.   If the amount NAIC paid the Debtor is dwarfed in comparison to the true value of the

services provides, it may constitute an unconscionable injustice.   That determination cannot be

made at the motion to dismiss stage.

IV.   **CONCLUSION**

For the reasons set forth *supra*, the Motion to Dismiss will be granted with respect to (a)

Count 1 against Mr. MacKenzie, for breach of fiduciary duty, for failure to state a claim, (b) all

counts against MMI and GRI, for lack of personal jurisdiction, and (c) Counts 1, 4, and 5 against

NAIC for aiding and abetting breach of fiduciary duty and common enterprise and/or joint

venture liability (collectively, the "Dismissed Counts"), for failure to state a claim; and will be

denied with respect to Counts 3, 6, and 7 against NAIC for avoidance and recovery of alleged

fraudulent transfers, quantum meruit, and liability on an open account (the "Surviving Counts").

Furthermore, each of the Dismissed Counts, other than Count 1, will be dismissed with

prejudice, as the Trustee was already given the opportunity to amend the Complaint to satisfy the

requirements of Rules 8 and 10(b), after an extended hearing in May 2020 where the Court

expressly explained the deficiencies to the Trustee, then entered the Dismissal Order.   Having

been afforded discovery and the opportunity to amend with the benefit of the Court's explanation

of the Complaint's shortcomings, the Trustee is not entitled to further amendment in an attempt

to cure the Amended Complaint's insufficiencies.   Although leave to amend is to be freely

granted, leave under the circumstances preset here would reward the Trustee's failure to take

advantage of the leave and direction already given and would prejudice the Defendants,

particularly GRI and MMI given the Court's finding that it lacks personal jurisdiction over them.

*See J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 613 (3d Cir. 1987) (leave is to be

freely granted, but the court may deny leave if motivated by bad faith or would be prejudicial to

the opposing party); *Atkins v. Gelt Props., LLC (In re Atkins)*, 525 B.R. 594, 605 (Bankr. E.D.

Pa. 2015) (dismissing claims with prejudice where plaintiff was already given opportunity to

amend).

Notwithstanding the Trustee already having been granted leave to amend once, however,

the Court will allow the Trustee leave to amend only with respect to Count 1 against Mr.

MacKenzie and NAIC.   Although the Amended Complaint falls far short of alleging well-pleaded facts with respect to Mr. MacKenzie specifically, the Court believes that, based on the general allegations of the Amended Complaint and the principle that leave should be freely granted where warranted, it is an appropriate exercise of its discretion to permit the Trustee one last chance to adequately plead her fiduciary duty-related claims against Mr. MacKenzie and NAIC, the only two defendants over which this Court has jurisdiction.

An order consistent with this Memorandum shall be entered.

Dated:   April 30, 2023

_____
MAGDELINE D. COLEMAN
CHIEF U.S. BANKRUPTCY JUDGE

Gary F. Seitz, Esquire
Holly E. Miller, Esquire
Gellert Scali Busenkell & Brown LLC
8 Penn Center
1628 John F. Kennedy Boulevard, Suite 1901
Philadelphia, PA 19103

Fridrikh V. Shrayber, Esquire
Dentons Cohen & Grigsby
625 Liberty Avenue, 5th Floor
Pittsburgh, PA 15222-315